Good morning. Jeffrey Jones for the appellant, me Nguyen. During Ms. Nguyen's interrogation by the police... Did you want any rebuttal time? Oh yes, three minutes. Please, thank you. During Ms. Nguyen's interrogation by the police, she invoked her Fifth Amendment right by telling the officer, and then, I think I shouldn't say anything more from there. The California Court of Appeal applied Miranda to rule that that invocation was insufficiently clear to require the officer to stop the interview. The California Court examined the surrounding circumstances of the interview, as Supreme Court case law requires, but they did so in an objectively unreasonable manner. And first of all, the court gave significant weight to what Ms. Nguyen said and did after the invocation, which violates federal law and Supreme Court case law. The surrounding context of the invocation is highly relevant, but only up until the invocation and not after the invocation. And considering that in the manner the court did, it also violates common sense. Once she, you know, continued to talk freely, and the court even faulted her for not being silent after that, after she'd immediately employs interrogation tactics, saying, I'm just trying to get your side of the story, your boyfriend caused some drama, then she keeps talking. But that's, that's, not only is that off-limits, it doesn't make sense because the officer's already decided to keep the interrogation going. Well, counsel, I think you're referring to the Smith case, and that says that statements after a clear invocation should not be used to undermine the clear invocation. But the question here, I think, is, is the, the beginning of her statement saying, I think I shouldn't say anymore. And why is it unreasonable for the, for the state court to have determined that that was not a clear invocation? If the statement is unclear in and of itself, then the, while the circumstances are relevant, if, if the, I think if any statement, if it's facially unclear, then the court can say, well, that was an unclear statement. Like if I, you know, said, maybe I'm not sure. But once you're examining the clarity of it, you can't diminish the clarity by looking at what was done after. For instance, you know, you invoke, the suspect invokes her right to remain silent, and then continue, continues to talk freely. But she's invoked. It doesn't make sense that you're faulting her for falling for interview tactics. You know, I'm, I'm entirely sympathetic with your argument, but our case law in this area is horrible. I mean, it's very clear what she wants to me. But I, under our case law, I'm not sure it is. Which, which case law? It's the, the whole range of case law in terms of what constitutes a sufficiently unambiguous invocation of right to counsel. Yeah, there's, I think cases come out both ways. Well, if they come out both ways, we're in trouble under AEDPA. I, I respectfully disagree, Your Honor, because it depends on the surrounding circumstances. And if one, if one thinks about how we use the phrase, I think, in some contexts, it can be, it can indicate ambiguity, absolutely. But in other contexts, it can be a, it can be part of a very clear statement. And I think this is one of those, indisputably one of those circumstances. And all these cases that come out both ways, well, they all have different circumstances. The only thing they have in common is that the suspect included, I think, in their invocation. And I think there are cases, and this is one, where it can be objectively unreasonable to say that the statement is unclear simply because it contains that phrase. Unreasonable under what Supreme Court authority? Under, well, under, under Miranda and under Davis, and particularly under Smith, because the court relied very heavily on what she did and said after the invocation. And how do you grapple with our Clark decision, in which an Arizona court found, I think I need a lawyer, was not a clear invocation, and our court said, that's not an unreasonable application of Federal law? I think the, because of the circumstances in this case are different from Clark. First, the post-invocation conduct being considered heavily, and that wasn't the case in Clark. And I'd note a second thing. They considered the fact that prior to her invocation, she made an equiv, what they, the court called an equivocal reference to the right to counsel early in the interview. But she asked the officer a question. Early in the interview, she says, well, should I have an attorney present? And I don't, I think it's unreasonable to say that a reasonable police officer would view that as lending equivocation to a subsequent request to stop the interview. That's, it doesn't. It's simply a question, and he didn't answer it. But whether he did or not, it doesn't affect her, her invocation. It doesn't make it less clear. Let me ask you this. It seemed to me as I was reading the record that the third statement, when she says, I need an attorney, I don't know, was actually the closer question of what was clear. But do you, I take it you don't necessarily agree with that, but, you know, why pursue the second one as opposed to the third? I'm curious. Well, the same, the language, the language I don't know, I think, is equivocal when you say, like if she had said, I don't want to say anything more, I don't know, maybe I should, or something like that, instead of just saying, I think I want to stop the interview, essentially. That's why I think, I think the statement at issue here is the most clear statement. I think it's an abundantly clear statement. And why, so we all understand that the context can be considered. Why is it unreasonable for the state court to consider the fact that she seemed to volunteer information and interject, even interrupt the police officer at times to give out information? Why isn't that an indication that she wanted to speak and not remain silent? She says, I think I shouldn't say anything more from there. And then the officer, the officer keeps interrogating her. But he's using a well-worn interview tactic, he's saying, I just want to get your side of the story. And then she says, we don't know what she was going to say to us. She could have said, no, I want to stop, I want to stop the interview. But then he continues, your boyfriend caused, your boyfriend, he's minimizing her conduct, suggesting someone else contributed to the situation, other people caused drama. I just want your side of the story. And she falls for that. That's what can't be considered. That's why once the invocation's made, the officer can't continue to interrogate and then rely on the fact that she fell for it. That's the answer. There's a third, I'm sorry, is there any, a third, a third circumstance I think is also important that the California court didn't consider is the timing of her invocation. He's getting background, the officer's getting background information, and he hasn't asked her anything that would elicit an incriminating response yet. He said, well, how did you get there? She met her friend. And it's, this is the critical point of the interview where she gets, it's the point where he says, and then what happened? And it's the shooting. This is the first question about what did you do with the gun? This is the crux of the case. Right then. That's when she invokes. And a reasonable police officer, he knows what he's doing. He's, you know, opening her up, getting background information, and then he asks the questions that are designed to elicit the evidence that he wants. And that's when she invoked. A reasonable officer knows he's at that point in the interview, and at that point when the suspect says, I think I shouldn't say anything else, a reasonable officer knows that she's invoking her right to remain silent. And he employs interview interrogation tactics that are designed to prolong the interview and precisely designed and employed to stop, to stop her from. And so your, your argument is that the, her volunteering information came after that second invocation, and so therefore we should not consider that context. Yes, absolutely. Following that statement. I think, I think Smith, I think Smith requires it. Okay. Did you want to speak to the IAC issue or leave it at that? No, no, your honor. If you have any, I'm prepared to answer any questions you have. I don't have any other questions. I don't, if my colleagues, do you have any other questions? Okay. Thank you. Mr. Ott? May it please, may it please the court, this is Gregory Ott for respondent of Pelley. On the Miranda issue, the state court, the first thing it did was find that the language was ambiguous. That was the first conclusion it reached. After that, it did consider the context, including what followed the alleged invocation. Now, I agree that the case law says you can't consider facts after the alleged invocation to diminish the clarity of the, of the invocation, but that's not what happened here. The court had already said, this is, this is unclear. I think in these circumstances, I think it's okay. It may be even giving her the benefit of the doubt to, to look at the whole picture and say, Hey, we'll look at what followed. Maybe that clarifies it, but it didn't. The court had already said, this is ambiguous. I think under these circumstances, let me put it this way. You can't use a post invocation facts to render an ambiguous, sorry, a clear invocation ambiguous. But I think you, I think it is okay to look at post invocation facts to consider the totality of whether an otherwise ambiguous invocation might be an ambiguous. I think that's all the court was doing. And the, and in looking at that, the fact that she's, she's quite chatty, the very next sentence that the officer makes, she cuts him off and she does that repeatedly. That's really all the court was saying that she's, there's, there's, he's not pulling teeth here. She is very willing to talk. And as far as, as far as it being sandwiched between two other ambiguous statements, I, I don't think it weighs a lot either way, but I think it's, it's something a court could reasonably consider. And I don't think it violates any clearly established law to say, well, these other two statements that are, are, or maybe challenged are ambiguous and they don't clarify this challenge statement in the middle. I think that's, again, I think that's all they were saying. And I don't think that's unreasonable to, to say, even if, even if another jurist could say, Hey, I think we've got two other, you know, ambiguous statements. I think three ambiguous statements helps shore up the one in the middle. Now one other, one other circumstance that I wanted to point out, it's positive, but this isn't a case like Sessoms where you've got a teenage kid with no experience and the father's waiting outside. This is a 32 year old woman with a healthy criminal history. She's she's familiar with the system. And so I don't think we have any of those sorts of naivety issues in this case. And Davis, as far, excuse me, Davis recognizes that, that this, that the ruling, the requirement of an unambiguous implication may disadvantage some suspects who are because of their lack of knowledge, experience, or linguistic inabilities may not, may not be the standard. But as they point out, the Miranda warnings themselves are the principal safeguard here. And that once a suspect has, has waived their rights and begun to speak that they need to invoke and they need to clearly invoke. In Davis, in Davis, if I recall correctly, the, the second invocation in that case was I think I need an attorney and the questioning stopped. Can we read something from that to suggest that I think I need an attorney here is a clearly established rule under Supreme Court precedent? Your Honor, I'm, I am not familiar with that, that passage. I remember, I remember in Davis that the suspect at one point had said I, that his father had suggested that maybe he should get an attorney. And I remember the maybe language being focused upon. I, I, I'm sorry, I don't recall the other, the other passage that was at issue there. But in terms of an application of Davis and whether an application is reasonable, I think that we can look at this, the circuit's authority and other cases that I've cited and Clark is, is probably the most deposit example where the words I think were that sort of qualifier were deemed to be ambiguous. But I'm, I'm sorry, I don't, I don't, I'm not familiar with that, that other passage. If you'd like me to brief that, brief Davis more, I'd be happy to do that. I would like to make a quick comment on the IAC claim if that's okay. I think that a lot of the focus here has been on what happened between her arrest and the plea and it's easy to lose, lose focus on the fact that what's the claim here concerns the plea advice and, and the plea offer and the advice for that offer takes up a pretty narrow window of time. And I think that should, that should be the focus. What was, what happened before is still relevant, but that the focus really should be on the day of the prelim because that's when the plea came into being, plea offer, I'm sorry. And I just wanted to point out a few things. One is the plea, it's undisputed, the plea offer was made that morning. It was communicated to her that morning. There was no plea offer before that time and her exposure at that time and through the prelim was 29 years. Now it is also undisputed that he mentioned that the extent of which is disputed to her that morning that life charges might be coming after the prelim. Now she requested a continuance. He asked the court for a continuance that was denied, but, but granted in part, the court offered a few hours continuance for her to consider and, and then decide whether she wanted to take the plea. And she rejected that. She rejected that and proceeded. Now the claim, and if I can quote her, her, her own summation of in her declaration is that, had the court gave me a continuance and Mr. McElmurry took the time to explain to me about how much time each charge carries, end quote, she would have understood and accepted. Well, the continuance was granted, just not to the extent she wanted. She rejected that continuance and Mr. Eklund presumes that he would have explained the and the exposure of the otherwise exposure during that continuance if she had given him the opportunity. The fact that there was a short turnaround on this, on this plea is not counsel's fault. Neither is the lack of a continuance and neither is the denial or the rejection of the short continuance that was granted. So that leaves us with, well, what about their discussions before that day? Well, the state court had two competing declarations, but when the record, the state court can look at the record and see that one, one is more credible than the other. I think it can resolve this without a hearing, which is what it did. The district court implicitly reached the same conclusion. Her, her declarations are not entirely consistent and they leave out, well, they're frankly implausible. I won't belabor that, but I'd be happy to discuss those in detail if the court would like, but I think I've briefed that, but mostly, mostly I just wanted to sort of bring the focus in light of the allegations, bring the focus back to the window of the plea offer and the rejection, which is really the first and foremost, what, what is at issue. I have no questions to, um, any questions for my colleagues? No, thanks. Okay. Thank you, Your Honor. I'll submit it. Thank you. Mr. Jones, you have the last word. It's just a couple, just a couple of points. Um, the, as my colleague noted, the, the court did consider the language ambiguous, I think, but as we've already discussed, um, the, the context is important and I think if, I'd ask the court to reflect on how we all use, I think. It's not, it doesn't mean maybe. It can in certain situations, but in other situations, it can be very clear and, um, so I don't think we could say that it's inherently ambiguous. You have to go beyond that and look at the circumstances. And when we get to the circumstances, I submit that the, the rule that you can't consider anything post-invocation is a hard and fast bright line rule. There's no qualification to it. We can't look at the statement and say, well, this statement, we're going to consider post-invocation. That's what the court here did. But I think the law clearly forbids that and I think that, that the court did that takes this out of EDPA. That's an unreasonable application of federal law. And if you think about it, it makes sense because the standard here, indisputably is, what would a reasonable police officer have thought? Well, a reasonable police officer, once she says the statement that we're arguing is an invocation, once she makes that statement, a reasonable police officer can't not honor that immediately and then, and then decide that he's not going to honor it based on what she did after he refused to honor it. That, that can't be a reasonable decision. We have to look at what he knew at the time he made his decision. And as soon as he says, well, I'm just trying to get your side of the story, he's refused to honor her invocation. The question is, what did she say then? And I totally agree with you that if it's unambiguous, that's the end of the, that's the end. I mean, my problem is with the case law. It's, it strikes me that this is an invocation. People often say, sort of out of politeness, I think, when what they really mean is, I don't want to say anything more. But they say, I think, out of politeness. It's clear what she, what she wanted. And the officer, relying on what I'm sure had been the officer's training, understood that that's sufficiently ambiguous that he can go forward. I hate the case law, but there it is. And I wouldn't, I understand what you're saying. I'd say that if the officer did that, he misunderstood the case law because it's, I don't think it's fair to say that, you know, the case law, because of what the case law is, that any time a suspect says, I think, in this, as part of an invocation, that it can be disregarded. And, well, and just as a related point, it's, when she cuts him off after, after the invocation, at that point, she's, he's continued to interview her. And when she cuts him off and continues to talk, she's responding to his continued interrogation. I just make, that's my last point, Your Honor. Thank you very much. Thank you.  Thank you.
judges: WALLACE, FLETCHER, SANCHEZ